682 So.2d 231 (1996)
Henry R. MILLER, Jr., Julie Carmouche and Milton Cambre
v.
Charles J. OUBRE, Jr., in His Capacity as Clerk of Court for St. Charles Parish, Janice Z. Hymel in Her Capacity as Registrar of Voters for St. Charles Parish and W. Fox McKeithen, in His Capacity as Louisiana Secretary of State.
No. 96-CA-2022.
Supreme Court of Louisiana.
October 15, 1996.
*232 Randell O'Neil Lewis, Luling, for Applicants.
Thomas P. Anzelmo, Sr., Metairie, A. Mark Flake, New Orleans, Robert Louis Raymond, Destrehan, Sheri Marcus Morris, Baton Rouge, Campbell McCranie, Sistrunk, Anzelmo & Hardy, Metairie, Angie Rogers LaPlace, Baton Rouge.
CALOGERO, Chief Justice.[*]
The question presented in this case is whether a post-1974 Home Rule parish government has the authority to redraw justice of the peace and constable district lines and to create an additional justice of the peace and corresponding constable district. We find that certain ordinances passed by the St. Charles Parish Council to redraw justice of the peace and constable district lines and to create an additional district are unconstitutional. Under our state constitution, only the Louisiana Legislature has the power to change justice of the peace courts which existed on the effective date of the 1974 constitution, including the power to redraw district lines and create additional justice of the peace and constable districts.
Prior to 1971, the St. Charles Parish Police Jury established ward and precinct lines for justice of the peace and constable districts in accordance with Art. VII, § 46, La. Const. of 1921.[1] In 1978, after the effective date of the Louisiana Constitution of 1974, St. Charles Parish adopted a Home Rule Charter in which a Parish Council was created as the parish governing authority in place of a preexisting police jury. In 1982, the St. Charles Parish Council adopted ordinances which redrew the boundaries of the six existing justice of the peace and constable districts along the same lines as the district boundaries of the Parish Council. In 1991, the St. Charles Parish Council adopted an ordinance which redrew the St. Charles Parish Election District boundaries to create an additional seventh district. The ordinance was silent on whether it applied to the offices of justice of the peace and constable.
During the First Extraordinary session of the state Legislature in the spring of 1996, Senate Bill No. 64 was introduced to create an additional justice of the peace district and an additional constable district in St. Charles Parish (increasing the number of districts from six to seven) and to redraw the district lines to mirror the existing councilmanic lines. The bill failed.
Thereupon, in a renewed attempt to clarify the 1991 redistricting ordinance, in June, 1996, the St. Charles Parish Council adopted the ordinances at issue. Ordinance No. 96-6-4, adopted June 3, 1996, redrew the justice of the peace district boundaries and created a seventh justice of the peace district. Ordinance No. 96-6-5, adopted June 17, 1996, redrew the constable district boundaries and created a seventh constable district. Qualifying for the offices of justice of the peace and constable was scheduled to begin Wednesday, July 10, 1996.[2]
*233 Plaintiffs Henry R. Miller, Jr. and Julie Carmouche, two justices of the peace, and constable Milton Cambre filed a Petition for Temporary Restraining Order, Preliminary and Permanent Injunction and Mandamus seeking to stop the qualification and election of justices of the peace and constables on grounds that the newly drawn and created districts were unconstitutional. The district judge agreed, and granted the requested restraining order, enjoining the elections from proceeding other than in accordance with the specifications under the constitution and law in effect on December 31, 1974. The district judge reasoned:
... La. Const. Art. 5, § 20 effectively enconstitutionalizes [sic] all details of mayor's and justice of the peace courts, providing "Mayors' courts and justice of the peace courts existing on the effective date of this constitution are continued, subject to change by law," and apparently allows changes only by state law rather than by parish ordinance....
The district court also made a parenthetical reference to Art. VI, § 25 of the La. Const. of 1974, which limits the power of Home Rule governments to affect courts, and also referred to St. Charles Parish Home Rule Charter Art. VII, § G, which states that the Charter shall not affect "Courts and their officers as provided in Article V of the Constitution;...".
St. Charles Parish intervened prior to the hearing on the requested preliminary injunction. After the hearing, the district judge entered a preliminary injunction enjoining qualifications and elections other than in accordance with ward and precinct lines which were established by the St. Charles Parish Police Jury and which existed in 1971. However, the Registrar of Voters informed the court that it would be extremely difficult to conduct an election utilizing 1971 district lines.[3] The district court then amended its order to enjoin the conduct of the elections other than in accordance with the district lines established by the St. Charles Parish Council in 1991.[4]
Upset with the district court's order that the elections should proceed along the 1991 councilmanic district lines, plaintiffs filed a writ application in the Court of Appeal. Their writ application was granted. The Court of Appeal found unconstitutional both the 1996 ordinances and the district court's ordering an election utilizing 1991 district lines. The Court of Appeal cited Article V, § 20 of the La. Const. of 1974 and LeBlanc v. Altobello, 497 So.2d 1373 (La.1986) for the proposition that only the state Legislature has the power to reapportion the justice of the peace districts. Further, the appellate court reasoned that Art. VII, § G of the St. Charles Parish Home Rule Charter prohibits the Council from taking any action which may affect the courts and officers provided for in Article V of the state constitution, which includes justice of the peace courts. The court of appeal set aside the 1996 ordinances as unconstitutional usurpations of legislative authority, and enjoined the elections until such time as the Legislature should deem it appropriate to create a seventh district and redraw existing district lines for the offices of justice of the peace and constable. Justices of the peace and constables now *234 serving were retained in office until the Legislature acts.
Intervenor St. Charles Parish then filed an emergency writ application in this Court. Because the court of appeal explicitly declared the ordinances unconstitutional, the Parish's writ application was granted and docketed as an appeal.
The Parish challenges the ruling of the Court of Appeal by first arguing that plaintiffs' writ application in that court was untimely because it was not filed within 24 hours of judgment, citing La. R.S. 18:1409(D). We find no merit in this argument because under La. R.S. 18:1409(A), the 24-hour time limit applies only to actions objecting to candidacy or contesting an election. This time constraint is not applicable in this case where there is no objection to the candidacy of a particular person, and no suit by a candidate or other interested person contesting the results of an election.
The Parish also argues that the Court of Appeal was without jurisdiction to consider plaintiffs' writ application because under Art. V, § 5, La. Const. of 1974, the Supreme Court has original jurisdiction over appeals of a district court's declaration that a statute or ordinance is unconstitutional. We find no merit in the Parish's contention because plaintiffs in this case did not seek review of a district court's declaration of an ordinance's unconstitutionality. Plaintiffs' only quarrel with the district court's judgment was with the order for the election to proceed along 1991 district lines, and it was this order which was the basis of plaintiffs' writ application, not the district court's unconstitutionality finding. The Court of Appeal had jurisdiction over the issue plaintiffs presented to it. And in any case, this matter is before us now, in the proper court to review declarations of unconstitutionality.
We now proceed to the crux of this case: the Parish's argument that as a post-1974 Home Rule government, it has power concurrent with the state Legislature to enact justice of the peace and constable redistricting ordinances. The Parish says that it is beyond dispute that Home Rule governments in existence on the effective date of the 1974 constitution possessed the power to redistrict justice of the peace and constable wards consistent with the redistricting power given to police juries in Art. VII, § 46 of the 1921 constitution. (see fn 1 supra). The Parish points out that in Art. XIV, § 16, the 1974 constitution specifically continued this 1921 constitutional provision as a statute, thereby preserving the police juries' redistricting power.[5] Arguably, the power of home rule governments consistent with the power of police juries was also preserved. While the statute continuing the terms of Art. VII, § 46, La. Const. of 1921 was repealed in 1975 by Act No. 95 of the Legislature, the Parish contends that the repeal affected only the power of police juries and not the power of home rule governments.[6] According to the Parish, the authors of the 1974 Constitution could have, but did not, specifically provide that only the Legislature may establish, divide or merge justice of the peace districts, as is the case for judicial districts; therefore, the absence of this specific language in the Constitution giving such power to the Legislature alone allows the Parish to exercise power concurrent with the Legislature to redistrict or reapportion justice of the peace districts.
*235 We disagree. Under our state constitution (and incidentally under the St. Charles Parish Home Rule Charter as well), only the state Legislature has the power to reapportion justice of the peace districts. Likewise, since a constable shall be elected "within the territorial limits of the justice of the peace ward of the court for which he is elected" (La. R.S. 13:2583), the Parish Council is also without authority to redistrict constable districts.
Article V, § 20 of the 1974 Constitution provides:
Mayors' courts and justice of the peace courts existing on the effective date of this constitution are continued, subject to change by law.
Contrary to the arguments of plaintiff and the district judge, this article only continues the existence of justice of the peace courts, not the method or manner by which they are reapportioned. By including the phrase "subject to change by law", it is clear that the drafters of the Constitution intended that only the Legislature shall have the power to alter the justice of the peace courts in any way, including redistricting or reapportionment.
As originally drafted and passed by the Constitutional Convention, this article read:
Mayors' courts and justice of the peace courts existing at the time of the adoption of this constitution are continued subject to change by the legislature. (emphasis added.)
However, after review by the Committee on Style and Drafting of the Constitutional Convention of 1973, the phrase "by the legislature" was changed to "by law". This was simply a stylistic change which was approved by the Judiciary Committee of the Constitutional Convention of 1973, and which was subsequently adopted by the full convention.[7] "Subject to change by law" means subject to change by the state Legislature and only by the state Legislature.
This rejection of the Parish's "concurrent power" argument is supported by the constitutional debates. According to Lee Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37 La.L.Rev. 765, 782 (1977), the convention rejected an amendment that would have increased the power of local government agencies in regulating justices of the peace. Passage of the amendment was sought because the proposed language would "require that whenever any particular local government wanted to either decrease or increase the number of justices of the peace, they would have to go to the legislature and get an act." State of Louisiana Constitutional Convention of 1973 Verbatim Transcript, August 17, 1973 at 99. Other delegates made similar comments on the proposed unsuccessful amendment.[8] Thus, in voting to reject the amendment and thereby accepting the committee's proposal, the delegates certainly knew they were taking the power to redistrict justice of the peace districts out of the hands of local government, and that they were changing the 1921 Constitution in this regard.
*236 Article VI, entitled "Local Government", is very lengthy and explicitly enumerates the powers of home rule charter governments and other local governmental subdivisions. It provides no support for the Parish's "concurrent power" argument. In fact, Article VI recognizes Art. V, § 20, La. Const. of the 1974, as the sole source of constitutional authority to redistrict justice of the peace boundaries. Art. VI, § 25 provides: "Notwithstanding any provision of this Article, courts and their officers may be established or affected only as provided in Article V of this constitution." (emphasis added.)[9]
We also find no merit in the Parish's argument that the power of the police jury to redistrict justice of the peace wards was continued as a statute by the 1974 constitution. In 1975, the state Legislature explicitly repealed Section 46 of Art. VII of the La. Const. of 1921 which had been continued as a statute. Any power of the police jury to redistrict was therefore repealed well before St. Charles Parish adopted a home rule charter system of government in 1978. Hence, redistricting power was not a power transferred to the Parish Council in 1978 by its predecessor, the St. Charles Parish Police Jury.
An examination of the St. Charles Parish Home Rule Charter reveals additional flaws in the Parish's position. St. Charles Parish adopted a home rule charter in January, 1978, under the authority of Art. VI, La. Const. of 1974.[10] Under Article VI, "home rule" does not mean complete autonomy but rather it is a rule by which local government has the freedom and flexibility to manage its own local affairs without undue legislative influence. Kean, Local Government and Home Rule, 21 Loy.L.Rev. 63, 66 (1975). Under Article VI, the state is supreme on state-wide concerns, but it allows a home rule government to exercise any necessary power or function except as may be expressly limited by its charter and the general laws, or as may be inconsistent with other provisions of the Constitution. Id. The power of a home rule government within its jurisdiction is as broad as that of the state, except when limited by the constitution, laws permitted by the constitution, or its own home rule charter. Francis v. Morial, 455 So.2d 1168, 1171 (La.1984). As we recently affirmed in St. Charles Gaming Company, Inc. v. Riverboat Gaming Commission, et al, 94-2697 (La.1/17/95), 648 So.2d 1310, 1317, the 1974 Louisiana Constitution grants to post-1974 home rule charter governments such as St. Charles Parish immunity from state legislative control when exercising within their boundaries legislative powers consistent with the 1974 state constitution that are not denied by general law. Thus, powers of a home rule government can be limited by its own home rule charter, the state constitution, or general state laws.
In Article II of its Home Rule Charter, St. Charles Parish recognized the limitations on its power and provided that the Parish would only have such powers that were not denied by or inconsistent with the Charter. Specifically, Article VII, § G specifically provided that the Charter shall not affect "Courts and their officers as provided in Article V of the Constitution".[11] Article V of the state constitution *237 specifically encompasses justice of the peace courts in § 20. Contrary to the Parish's assertion of power concurrent with the state Legislature, its own Charter acknowledges that it has no authority to affect justice of the peace courts in any way, including redistricting.
We conclude that the 1996 redistricting ordinances are unconstitutional because only the state Legislature has the authority to alter existing justice of the peace and corresponding constable districts or create new offices or districts. Further (but not necessary to the disposition of this case), these ordinances are also invalid because they violate the terms of the St. Charles Parish Home Rule Charter.[12]
Having determined that these ordinances are unconstitutional, we turn now to the matter of the enjoined elections. For the reasons stated, any justice of the peace and constable district lines adopted by the St. Charles Parish Council subsequent to the effective date of the state constitution, including district lines drawn in 1982, 1991 and 1996, were and are constitutionally infirm, and the present justices of the peace and constables are sitting in unconstitutionally drawn seats. However, it would be contrary to our democratic system to remove these public officials from their elected positions at this juncture and deprive the electorate of its chosen representatives, especially considering that the six justice of the peace offices have long existed. It is only the districts as presently drawn and not the six justice of the peace offices that we have found to be invalid. The sitting justices of the peace and constables were duly elected, albeit in illegally drawn districts, and their elections were not challenged. Further, La. 42:2 provides: "Every public officer in this state except in case of impeachment or suspension, shall continue to discharge the duties of his office until his successor is inducted into office." As the incumbent justices of the peace and constables have been neither impeached nor suspended, they shall remain in office until such time as their successors are elected from legally drawn districts and are inducted into office.
Since it appears impossible to reconstitute the justice of the peace and constable districts along the lines drawn in 1971, it is appropriate that the Legislature be given a reasonable opportunity to reapportion these districts, bearing in mind that the present six justices of the peace and constables, holding existing offices, are occupying their offices notwithstanding that the districts from which they were elected have not been legally drawn.
Considering the particular circumstances of this case, we believe it is the duty of the Legislature to act swiftly to redraw the district boundaries to allow the calling of an election as soon as possible. The right of the citizens of St. Charles Parish to cast their vote for the offices of justice of the peace and constable should not be delayed longer than is absolutely necessary. Accordingly, we urge the Legislature to act expeditiously, preferably in its next session, to insure that the right of the citizens of St. Charles Parish to elect public officials of their choice can be exercised in the reasonably foreseeable future. In the event the Legislature fails to act at its next session, we reserve to the parties in this matter the right to apply for rehearing within fourteen days from the final day of the legislative session.

DECREE
For the foregoing reasons, we affirm the judgment of the Court of Appeal. St. Charles Parish Council Ordinances No. 96-6-4 and No. 96-6-5 are unconstitutional under the state constitution. Elections for these offices remain enjoined until such time as the Legislature is given a reasonable opportunity to reapportion these districts. Those justices *238 of the peace and constables now serving shall remain in office until constitutional districts are created by the Legislature, and their successors are duly elected from legally drawn districts and are inducted into office. If the Legislature fails to redistrict the boundaries for justices of the peace and constables during its next legislative session, the parties herein shall have the right to apply for rehearing within fourteen days of the final day of the legislative session.
AFFIRMED.
NOTES
[*] Lemmon, J. not on panel; recused. See Rule IV, Part II, § 3.
[1] Art. VII, § 46, La. Const. of 1921, read in part:

Any parish of the state, the parish of Orleans excepted, may be divided by the police jury thereof into not more than six nor fewer than three justice of the peace wards, from each of which there shall be elected one justice of the peace; provided, that the Legislature may reduce such number or even abolish the office of justice of the peace throughout the state.
The number of justice of the peace wards in the several parishes shall remain as now fixed until rearranged, or until the office of justice of the peace may be abolished, as herein provided;...
[2] Perhaps in anticipation of litigation, on July 1, 1996, the St. Charles Parish Council adopted Ordinance No. 96-7-1 to amend the Home Rule Charter to provide for authority to reapportion Justice of the Peace and Constable districts. A copy of this ordinance is not in the court's record, but according to the brief filed by plaintiffs-appellees, it reads in part:

An ordinance to provide for the amendment of the St. Charles Parish Home Rule Charter, to provide for the reapportionment of Justice of the Peace and Constable District lines.
* * * * * *
WHEREAS in order to establish the authority of the Parish Council to reapportion said Districts in the Home Rule Charter, an amendment is necessary....
[3] The Registrar of Voters indicated that it would be practically impossible to reconstruct districts along the same lines as existed in 1971 because of the Parish's increase in population and the present location of the population in areas previously uninhabited.
[4] The district judge reasoned that the St. Charles Parish Council had clear authority to redistrict its parish governing authority districts (the City Council) and had done so in 1991. Since the Justice of the Peace district lines had traditionally mirrored the boundaries of the governing authority wards (be it police jury or parish council), custom would dictate that a redistricting of the governing authority districts would effect a redistricting of the justice of the peace districts. Hence, the district judge concluded that an election along the 1991 governing authority district lines would be constitutional.

Thereafter, in a Per Curiam opinion filed in this Court, the district judge expressed the additional opinion that the parish governing authority had separate districting authority for Justice of the Peace courts based upon Art. XIV, § 16, La. Const. of 1974, which explicitly continues as a statute the 1921 constitutional provision empowering police juries to redistrict Justice of the Peace wards. The district judge rejected the argument that this statute was subsequently repealed.
[5] Art. XIV, § 16, La. Const. of 1974, reads in pertinent part:

(A) Provisions Continued as Statutes. Subject to change by law or as otherwise provided in this constitution, and except as any of them conflicts with this constitution, the following provisions of the Constitution of 1921 are continued as statutes, but restricted to the same effect as on the effective date of this constitution:
. . . . .
5. Article VII, Sections ... 46 through 51,....
[6] Acts 1975, No. 95 reads:

Section 1. Section 46 of Article VII of the Louisiana Constitution of 1921, which article XIV, Section 1, Louisiana Constitution of 1974 continues as a statute, is hereby repealed.
[7] Justice Albert Tate, Jr., Chairman of the Committee on Style and Drafting, explained:

In Amendment No. 4 we made just stylistic changes of tense, and in line with the consistent philosophy throughout the constitutional provisions, when we spoke about the legislature, the general intent of the membership in every instance we could determine except once or twice was they meant "by law." They may pass a law, and when we say by two-thirds of the elected members, it was by law enacted by two-thirds of the members. So in order to carry out that consistent intent throughout the constitution, we so recommended these changes.
State of Louisiana Constitutional Convention of 1973 Verbatim Transcript, January 9, 1974, Vol. IX, pg. 3239.
[8] In speaking in opposition to the amendment, Delegate Rayburn commented: "So I don't see any need for this amendment, when you've got the broad language you have. You are leaving it subject to change by the legislature in the committee's proposal. You are leaving it subject to change by the police jury in this proposal, with certain restrictions." Transcript, August 17, 1973, p. 805. Delegate Perez stated: "So again, if you leave the section as it is [and reject the amendment], you will substantially be changing the law and require the local government to go to the legislature to get an act passed to change the number of the justices of the peace whereas, with [the amendment], it could be done on a local level by local government. That's the difference between the two." Id. at 806.
[9] In further support of their position that the ordinances are unconstitutional usurpations of exclusive legislative power, plaintiffs cite LeBlanc v. Altobello, 497 So.2d 1373 (La.1986) where this court held that a legislative statute establishing a new justice of the peace court without parish wide jurisdiction was constitutional. While the issue of a local government's concurrent jurisdiction over Justice of the Peace redistricting matters was not specifically before us in LeBlanc, we did note: "The legislature is specifically given the authority to make changes relative to justice of the peace courts." 497 So.2d at 1375.
[10] Article I of the St. Charles Parish Home Rule Charter states:

St. Charles Parish is a local governmental subdivision as defined by Article VI, Section 44 of the Louisiana Constitution of 1974. The Parish shall operate under this Home Rule Charter under authority of Article VI, Section 5 of the Constitution.
[11] Article VII, Section G of the St. Charles Parish Home Rule Charter states in its entirety:

This charter shall not affect the School Board, the offices of the District Attorney, Sheriff, Clerk of Court, Assessor, or Coroner, and shall not affect Courts and their officers as provided in Article V of the Constitution; nor shall the Parish Council enact any ordinance defining and providing for the punishment of a felony or, except as provided by law, enact an ordinance governing private or civil relationships. (emphasis added.)
[12] At first glance, it may appear that an argument could be made that it was unnecessary for us to reach the constitutionality issue because we could invalidate the ordinances on grounds that they violate the St. Charles Parish Home Rule Charter. However, as noted supra at fn. 2, the Parish Council has already taken steps to amend the Charter in an attempt to give the Council redistricting authority. Therefore, in the interest of judicial economy and because of the effect of our decision today on the offices of Justice of the Peace and constable throughout the state, we deem it appropriate and judicious to reach the issue of constitutionality.